24-5006
District Court No. **1:20-cv-03010-APM**

**IN THE**
**United States Court of Appeals**

*for the*

**District of Columbia Circuit**

———————————

In re: BRAD GREENSPAN, on behalf of himself and all others similarly situated, *Petitioner*,

v.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*Respondent*,

and

UNITED STATES OF AMERICA, STATE OF ARKANSAS, STATE OF CALIFORNIA, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF INDIANA, COMMONWEALTH OF KENTUCKY, STATE OF LOUISIANA, STATE OF MICHIGAN, STATE OF MISSISSIPPI, STATE OF MISSOURI, STATE OF MONTANA, STATE OF SOUTH CAROLINA, STATE OF TEXAS, AND STATE OF WISCONSIN

*Plaintiffs*,

v.

GOOGLE, LLC.

*Defendant.*

1

STATE OF COLORADO, STATE OF NEBRASKA, STATE OF
ARIZONA, STATE OF IOWA, STATE OF NEW YORK, STATE OF
NORTH CAROLINA, STATE OF TENNESSEE, STATE OF UTAH,
STATE OF ALASKA, STATE OF CONNECTICUT, STATE OF
DELAWARE, DISTRICT OF COLUMBIA, TERRITORY OF GUAM,
STATE OF HAWAII, STATE OF ILLINOIS, STATE OF KANSAS,
STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF
MASSACHUSETTS, STATE OF MINNESOTA, STATE OF NEVADA,
STATE OF NEW HAMPSHIRE, STATE OF NEW JERSEY, STATE OF
NEW MEXICO, STATE OF NORTH DAKOTA, STATE OF OHIO,
STATE OF OKLAHOMA, STATE OF OREGON, COMMONWEALTH
OF PENNSYLVANIA, COMMONWEALTH OF PUERTO RICO,
STATE OF RHODE ISLAND, STATE OF SOUTH DAKOTA, STATE
OF VERMONT, COMMONWEALTH OF VIRGINIA, STATE OF
WASHINGTON,

*Real Parties in Interest.*

---

**MOTION TO RECONSIDER, MODIFY DISPOSITION OF OR
CORRECT THE RECORD AFTER JUNE 2024 SUPERVENED
CHANGE OF LAW**

---

I-    INTRODUCTION.....................................................................4

II-    ARGUMENT

A.  Appellant Complied With Circuit Rule 27(a)(3)(B) .................8
     Relief Should Not Be Removed Because of An ECF Error

B.  Supplementing 10e record with new evidence for....................9
     recusal motion

C.  If Circuit Retains Jurisdiction Then Klayman
     Intervening Change of Law Review Is Warranted
     To Prevent Manifest  Injustice....................,........................16


III-    CONCLUSION.....................................................................23

## INTRODUCTION

The interests of thirty eight States as Plaintiffs is a fact this Panel must
opine on as part of determining whether it is in public interest to
provide the relief sought in this motion and other requests for relief
owed under Sherman Act  and Clayton Act. This Court should also
take notice of the fact that after preventing the pro se plaintiff,   who is
an expert on online search and artificial intelligence (Request Judicial
Notice #60)[1], from contributing information to help the U.S. and State
Plaintiffs, banning the Appellant, the Court subsequently determined it
needed AI executives to weigh in on the remedial phase of the Federal

---

[1] "Myspace Founder Brad Greenspan predicted a world of "specialized AI-bots"
that will serve families and customers over a period of years.
"An SAI-BOT infected with malware or manipulated could take advantage of the
trust relationships built up over years of service with a perfect track record, only to
suddenly become a trojan horse that knows every way to take advantage of the
family it was designed to serve faithfully," he said. Myspace Founder Brad
Greenspan predicted a world of "specialized AI-bots" that will serve families and
customers over a period of years. (Luka, Inc./Handout via REUTERS/File Photo /
Reuters Photos)
The potential for damage, Greenspan said, would be immense.
"Imagine a hack shifting the software into the ultimate phishing, hacking and
emotionally manipulating machine you can imagine," he said. "It has the brain
power of Albert Einstein installed plus years of private data, audio recordings of
your entire family's voices and with its speech synthesis standard software."

https://www.foxbusiness.com/media/chatgpt-ai-platforms-excite-also-concern-
experts-need-learn-how-work-tools

antitrust matter and has literally forced other AI executives to

participate in the undersigned matter,  only AI experts approved by the

defendants apparently. This makes the pre-filing ban on the Appellant

even more controversial and a matter deserving the Panel's

reconsideration.

> "Appellate courts do not ordinarily consider evidence not
> contained in the         record developed at trial. *In re AOV Indus.,
> Inc.*, 797 F.2d 1004, 1012 (D.C.    Cir.1986) (citing *Singleton v.
> Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)). "It is
> within the discretion of the court of appeals, however,   to make
> limited exceptions to this rule when `injustice might otherwise
> result.'" *Id.* (quoting *Singleton*, 428 U.S. at 121, 96 S.Ct. 2868).

Based on rights owed to the State Plaintiffs under the Sherman Act,

and Clayton Act 7a-3 the 28 State Plaintiffs will lose hundreds of

millions or billions of dollars in prospective available claims and causes

of action that were removed contravening the State attorney rights

under 15 U.S. Code § 9 duty of United States attorneys because the pro

se plaintiff had raised Clayton Act Section 8 violations in his Clayton

Act Section 7a-3 communications contained in the January 4th "carried

away" motions (Request Judicial Notice #3, #4, #5, #6, #7, #8, #9, #10,

#11, #12, #13, #14, #15) this court must correct or supplement under

10e which will then require remand to have these undisposed motions

be heard after the State Attorney Generals have the opportunity to confer with the Plaintiff under Clayton Act 7a-3, 1514A, and pursuant to the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(d)(3).

This motion seeks to correct errors and omissions in the court record after ECF misclassified a Motion For Affirmative Relief with Summary Disposition by converting it into A "Memorandum In Support" of the Motion To Reinstate Appeal. (Request Judicial Notice #1). Therefore it was never considered on the merits and furthermore it fully addressed the Orders determination no equitable reasons were provided because the equitable reasons were included in the Motion For Affirmative Relief which was misclassified upn ecf filing and never entered into the system as a Circuit Rule 27(b) based on title requirement. The integrity of this court's proceedings has been severely compromised by multiple errors and omissions in the record. This motion is a desperate attempt to rectify these mistakes and accurately reflect the true events that transpired before this honorable court. The undersigned Court must take immediate action to correct or restore missing documents that were presented in support of an antitrust case involving the US government and 38 State Attorney Co-Plaintiffs under

Clayton Act 7a-3.

The District Court denied Mr. Greenspan's motion to intervene in United States, et al. v. Google LLC, No. 1:20-cv-03010-APM and State of Colorado, et al. v. Google LLC, No. 1:20-cv-03715-APM. This Court lets an ECF misclassification error usurp **Rule 27(a)(3)(B)** as part of a systematic negation of a pro se, rule 23f class of over 500 shareholders, and thirty eight co-plaintiff State Attorney Generals right to due process. The State attorney generals were harmed by misuse of FRCP Rule 5(d)(2)(B) prejudicing the State attorney generals and the pro se plaintiff as a result of the unlawful creation of fabricated misclassified district court record documents creating the illusion that the pro se plaintiff was filing motions after being dismissed instead of the actual timely date January 4, 2024 before the plaintiff had been dismissed in fact. Twenty-eight State Plaintiffs have also lost the benefit owed to them by the Federal Government under 1735, damaging their legal claim value and number of claims they could have brought during the trial. Also this Circuit has not considered Clayton Act 7a-3 subsection (d) as sufficient to provide an equitable reason for the vacating failure to prosecute before the matter was briefed. "Nothing in

this section shall be deemed to diminish the rights, privileges, or
remedies of any covered individual under any Federal or State law, or
under any collective bargaining agreement."

Rights of State Attorney Generals under 15 U.S. Code § 15f(a)
has been contravened because the Attorney General has failed to
provide written notification due under 15e(a) after learning of potential
opportunities for State Attorneys to bring actions under Federal
antitrust laws.

Also a violation of 15(f)(b) for failing to assist the State Attorney
Generals by not making available investigative files or other materials
which are or may be relevant or material to the actual or potential
causes of action under the Sherman and Clayton acts. For instance
inside the plaintiff's motion 60b3, joinder, and 60d, along with the
Errata, there was information qualifying as investigative files or other
materials that might have been relevant to the current investigation
and prosecution of the defendant. However despite the Attorney
General being aware of the existence of these materials they did not
provide them to any of the State attorneys to review.

To make matters worse, the defendant not only opposed the

involvement of the pro se plaintiff, but also added fuel to the fire by

attaching a 2016 default vexatious litigant order. This blatant

negligence on the part of the undersigned court must be addressed

immediately through Appellant's FRAP Rule 27 motion seeking relief to

correct or supplement the record. Not only does this error greatly

impact the standard of review for this case, but it also undermines the

rights of thirty-eight state attorneys general who have a stake in this

matter. It is imperative that these dates are corrected before any

further proceedings take place, as it could potentially lead to additional

claims and damages under Clayton Act 7a-3 and other laws such as

1514a. The failure to do so would be a grave injustice to both parties

involved and a direct violation of each state's laws and federal

obligations regarding antitrust regulations. These rights cannot be

ignored or brushed aside; they must be acknowledged and upheld

through proper delivery under 1734 or 1735, which is a fundamental

right guaranteed under 3771. This court should further consider

the fact that the defendant is continuing to launch personal attacks

against the Plaintiff in other courts even when the Plaintiff is not a

party to a case. For instance, Defendant Google's attorney just

filed an ecf letter to an SDNY magistrate judge seeking to attack

with the void San Jose vextious litigant order and now using the

D.C. similar pre-filing order. See (Request For Judicial Notice #58).

That is in the SDNY case about a M&A dispute between the Plaintiff

LiveVideo.AI Corp and defendants which are companies and

individuals, when the plaintiff here is not a party, because the

defendant knows the plaintiff here is an employee of LiveVideo.AI Corp

the party to the SDNY matter and because Google's lawyer is the

lawyer for the defendant in SDNY, Google directed its lawyer to

insert the void vextious litigant order from San Jose despite the DC

District Court granting Plaintiff's judicial notice #794 (Request judicial

notice #56) which laid out the dates when the pre-filing order was

granted in the ninth circuit which established the district court lacked

jurisdiction. Yet defendant Google uses this to harass and damage the

Clayton Act 7a-3 whistleblower and this is another equitable reason the

Circuit Court must provide relief sought herein.

    The court must make corrections to the record to accurately reflect

the proceedings. This motion seeks to add or restore missing documents

presented to the court and which were filed only to be "carried out" of

the Clerks office before appearing on the docket. Appellant unable to file a motion to extend via ecf on December 20 because of Pacers scheduled maintenance did email two motions to extend to the help desk timely before filing the motion to extend ecf thru December 30th.

## II. ARGUMENT

### A.    Appellant Complied With Circuit Rule 27(a)(3)(B) And Relief Should Not Be Removed Because of An ECF Error

Appellant's right to affirmative relief was overlooked and not disposed of on the merits when the Panel diverged from the established precedent of Circuit Rule 27(a)(3)(B) which specifically looks at the "title" of the filed paper. As a result, Appellant's due process rights were stripped.The Appellant's Motion For Affirmative Relief, styled as "MOTION IN OPPOSITION AND REQUEST FOR AFFIRMATIVE RELIEF", satisfied the requirements set forth in Circuit Rule 27(a)(3)(B).[2]

### B.  Supplementing 10e record with new evidence for recusal motion

Thirty-Eight State Plaintiffs Benefit If Evidence Added Back By This Court Correcting or Supplementing 10e Relief

The plaintiff filed a second set of motions before January 8th, which

---

[2] USCA Case #24-5006 Document #2077245 Filed: 09/29/2024 Page 2 of 18

were hand-signed and received by the court. The true and corrected record should show only six filings labeled as "serial filer" due to court errors. The timing of the January 4, 2024 motions requires the court to use a lower standard for addressing recusal, joinder, Motion 60b3, and Motion 60(d) compared to if they had been filed after dismissal. This makes it easier for the plaintiff to meet these requirements.

Lack of Jurisdiction For Circuit Court Upon Correction

Record proves jurisdiction lacking upon Circuit confirming:

1. Supervened change of law benefiting thirty-eight states

2. Vacating the pre-filing order

3. Reinstating January 4, 2024 motions and evidence

4. Allowing full benefit of rights owed to citizens of thirty-eight states

5. Enabling DOJ co-Plaintiff to benefit from information owed under Sherman Clayton Act Rule 7a-3

The court must rule on docketed January 4, 2024 motions and determine whether the Clerk will docket additional documents. Alternatively, the court could rely on co-parties' obligations under 1734 and 1735. Government employees have an obligation to provide information under the Sherman Act, especially as a ministerial duty

involving the Clerk of the court and the DC State Attorney General.

In undersigned court on remand that disclosure about first cousin Chirag was required to all plaintiffs that joined later which is the majority of State Plaintiffs, even if removed from Google in 2021 just months after disclosed to the eight State Attorneys.

Defendants 2022 Gift of Zipline Employment To Toxic Ex-SAP First Cousin Chagri Is Quickly Reciprocated By Judge Mehta Share Purchase Signal In Zipline Signaling Friendly Future Antitrust Outcome (Request judicial notice #16 - #26)[3]

The Twenty Eight State Plaintiffs faced potential harm as Judge Mehta failed to disclose his personal connections and bias in the case.

---

[3] comparing SEC filings Q1 2022 compared to Q4 2022  Shares held of Class C and Class A Alphabet Google shares shows Bailee Griffith has reversed from 2021 sell off and after Ziplink hires Chagri Mehta as CPO and Judge Mehta buys shares of Bailee Griffith, Bailee Griffith has increased shares held of Alphabet.

Comparing 700,000 approximate Alphabet Inc Class C and Class A shares Baillee Griffith held 3/31/2022. Then compared to 12/31/2022, the shares of Class C Alphabet shares  the fund owned had increased by 1731%.
Comparing Alphabet Inc Class A shares Baillee Griffith held on 3/31/2022 compared to 12/31/2022, the shares of Alphabet Class A shares the fund owned increased by 2218%.

His first cousin, Chagri, had worked at Google during the time when Judge Mehta's close friend oversaw the creation of Oracle Google No Poach Agreements in 2007. Adding to this conflict of interest was the fact that Chagri was fired from SAP for involvement in multiple bribery criminal violations.

In 2016, Chagri was virtually unemployable until Alphabet Google "rescued" him with a job in 2017. Just three months after Judge Mehta disclosed his first cousin's employment at Google in October 2020, Chagri was no longer working for Alphabet Google by February 2021. In May 2022, Chagri received a promotion to become Chief Products Officer at a pre-ipo tech company, Zipline, which counted Wilson Sonsini as its legal counsel (RJN #21) and had Alphabet Google as its founding investor.(RJN #20)

Further investigations revealed that Zipline was also backed by investment from Baillee Long Term Global Growth Fund. (RJN #20) Interestingly, this same fund had recently sold off most of its Alphabet shares due to "regulatory concerns." On March 31, 2022, Baillee only owned 608,459 shares of Alphabet Class C Shares and 52,745 shares of Alphabet Class A shares. (RJN #26) Less than two months later, Chagri

became Chief Product Officer for both Wilson Sonsini and Alphabet-

backed Zipline (RJN #23). A month after Chagri's promotion, Judge

Mehta purchased $50,000 worth of stock in the Baillee Fund on June

22, 2022. Most fact finders would find the evidence pointing to Judge

Mehta signaling to the defendants and Baillee. Six months later, the

number of Alphabet shares Baillee was holding had increased

significantly. (RJN #26) These suspicious actions raised questions about

Judge Mehta's impartiality and called into question the fairness of the

case at hand.  Further, Judge Mehta has clearly been influenced

deeply by Chagri Mehta's radicalism and extremism when it comes to

taking a feather light touch on corporate governance matters.

Indeed, Chagri Mehta thought the best course of action if a tech

company was in a lawsuit was to take the actions defendant Google

took. That is to erase the discovery it is obligated to turn over

and blame some default feature in the tech system being to blame.

This is why Judge Mehta refused to find a negative inference against

the defendant for discovery violations, fake legal privilege and other

unlawful acts. As his first cousin blogged several years ago inspiring

what would be his future employer Google

(See request judicial notice #31):

"COMPANY LAWYER

Lawyer: "The Court Ordered Us To Turn Over All Of Our E-Mail Records"
"Gosh. I Sure Hope They Don't Get Deleted During Regularly Scheduled System Maintenance."
"Oh No. That Would Be Bad! Wink! Wink!"

The court is requested to make corrections to the record due to significant errors and omissions. This motion aims to reflect accurately the district court proceedings by adding or restoring missing documents presented to the Court. Essential before any briefing begins, this correction ensures a fair resolution for all parties and acknowledges the rights of thirty-eight state attorneys general. They are expected to benefit from corrected motions containing potential evidence leading to additional claims and damages under Clayton Act 7a-3, 1514a, and other laws in alignment with each state's laws and federal obligations regarding antitrust regulations.

The appellate courts can supplement the record as unintentional omissions and errors have created a situation where it does not accurately reflect the district court proceedings. Supplementation has been deemed proper when an Appellant challenged the sufficiency and

significance of missing evidence, as seen in the case of Colbert. Failing to allow correction would result in manifest injustice harming the financial and legal rights of over twenty-eight state plaintiffs.

There is a need to resolve incorrect dates of filings and wrong versions through supplementation. The panel overlooked Appellant's right to affirmative relief when they diverged from Circuit Rule 27(a)(3)(B) precedent due to a clerical error categorizing the motion wrongly, thereby stripping the Appellant's due process rights. This motion contained evidence proving Appellant's standing, antitrust damages, Sherman Act 2 antitrust cause of action, and request for dispositive relief by summary affirmation.

The Circuit Court did not consider any Record updates by the District Court about fifty additional unsealing of record filings, disrupting the Appellate court's jurisdiction after deferring the briefing schedule for three summary disposition of motions never disposed of.

Correcting these records will prevent injustice for over thirty-eight State Plaintiffs representing their citizens and the DOJ who have interests at stake in this case against defendants accused of violating several sections of the U.S. Code, including 18 U.S.C. §§ 1519, 1515,

1017, and 1018. These officials allegedly transmitted false claims to the petitioner under 1514a discrimination and used government seals to fabricate circuit court records, intending to obstruct an ongoing DOJ antitrust investigation and litigation. This misconduct has compromised the legal process's fairness and integrity, prejudicing both the Federal Government and the 35 states involved in the underlying court proceedings.

## C. If Circuit Retains Jurisdiction Then Klayman Intervening Change of Law Review Is Warranted To Prevent Manifest  Injustice.

In [Klayman v. Porter, No. 22-7123 (D.C. Cir. June 11, 2024)](), (Request Judicial Notice #28) the D.C. Circuit strikes down the  "restricting [plaintiff]'s ability to file any related actions or claims for relief in any forum, state or federal," citing prudential and constitutional limits to federal equitable power.

### Pro Se Pre-Filing January 25, 2024 Order

Klayman  is a supervened change of law just months after Jan 25, 2024 undersigend pre-filing minute order declaring a vextious litigant banning the pro se plaintiff by default without notice. The Supreme Court has held that courts of  appeal are required to "consider

any change, either in fact or in law, which has supervened" since the disputed decision was issued.

Patterson v. Ala., 294 U.S. 600, 607 (1935); Watts, Watts & Co. v. Unione Austriaca Di Navigazione, 248 U.S. 9, 21 (1918).

**No Undersigned Pro Se lower review threshold Disclosure**

No Recorded acknowledgment of lower threshold reviewing document records. Critically the Panel by not affirming the intervenor filing documents below was not a lawyer like Klayman pro se plaintiff and put in record disclosure that would be factored into reviewing those motions in the undersigned court which is 100% of the filings by the pro se plaintiff subject to the pre-filing order.

CORRECTION OF INCORRECT EVIDENCE AND INFORMATION

This motion aims to accurately reflect the proceedings of the court by correcting and adding missing documents. The judge accepted an email from a pro se plaintiff under the Clayton Act 7a-3 as sealed evidence, but it was filed unredacted on the docket. This error significantly impacts the case outcome and must be corrected before any briefing begins. The correction is crucial for acknowledging the rights of thirty-eight state attorneys general to benefit from corrected motions

containing evidence that could lead to additional claims under antitrust laws. These rights can only be exercised through delivery under 1734 or 1735, guaranteed under 3771.

The pre-filing order appears to be based on a San Jose District Court order deeming pro se filings frivolous after the class counsel withdrew, and the plaintiff intervened to request an extension in order to find new representation. Notably that judge did not rule on the pending class counsel filed complaint. The ruling was a void order because jurisdiction was lacking due to an ongoing appeal in the Ninth Circuit. Critically the undersigned court in granting the plaintiff's request for judicial notice, actually noticed the key dates proving lack of jurisdiction as fact. The key basis the undersigned order relies on is the timing of five motions filed by the pro se plaintiff. The Appellant seeks this court correct the record due to supervened change of law and also using its authority under FRAP 10(e) to supplement still missing 15 carried off document records, January 4, 2024 Clerk certified.

## Klayman Frequency Threshold Not Met

The gravamen of the conduct targeted by the undersigned court compared to Klayman also merits a reversal. Klayman states:

"Pre-filing injunctions, though, must be a tool of last resort and reserved for those rare and egregious cases in which the "frivolous or harassing nature" of a litigant's actions threatens the "administration of justice" or the "integrity of the courts[.]".. Courts    impose that high threshold because such injunctions can "unduly impair a litigant's constitutional right of access to the courts."

Appellee's Exhibit A 2016 Order lists six matters and is what

the undersigned court uses to justify its Order but Klayman cites

numbers must far exceed the six matters at issue considered by the San

Jose court in 2016 :

"In re Green, 669 F.2d 779(D.C. Cir. 1981) (per    curiam), a pro   se litigant had "deliberately flooded" state and federal courts with 600 to 700 lawsuits over the course of a decade. Id. at 782; see id. at 781. As a result, we directed the district court to enter a pre-filing injunction constraining the litigant from filing "any civil action without leave of court."

Here the pro se never filed a single "lawsuit" in D.C., nothing in

the record asserting being on pace to file a large number of filings,  nor

any forecast of more appeals taken at such time let alone a large

number of frivolous ones. No "confounded docket management",

"obstructed administration of justice." finding or predicate

Not mentioning any specific number, the undersigned court like

the reversed Klayman court also made no findings plaintiff

confounded its docket management or otherwise obstructed the

administration of justice

> "First, the filing of six lawsuits across several jurisdictions does
> not, without more, provide a sufficient predicate for the
> extraordinary relief of a pre-filing injunction barring litigation in
> the courts within the D.C. Circuit. See In re Powell, 851 F.2d at
> 431 ("Overall, the district court should look to both the number
> and content of the filings as indicia of frivolousness and
> harassment."). Six lawsuits will rarely, if ever, threaten the
> courts' ability to manage their dockets or disproportionately
> burden the courts' ability to operate efficiently and fairly. See id.
> at 432 (finding that litigant's thirteen filings did not pose a
> sufficient threat to the orderly administration of justice to warrant
> a pre-filing injunction). ...Tellingly, the district court here made no
> findings     that Klayman's six lawsuits confounded its docket
> management or  otherwise obstructed the administration of
> justice."

## No Substantive Findings

Klayman also describes a requirement to support a pre-filing order

with substantive findings:

> "the district court did not support its characterization of
> Klayman's suits as frivolous with "substantive findings[.]" In re
> Powell, 851 F.2d at 431. Klayman's lawsuits stop short of the
> pervasively frivolous and facially insubstantial character that has
> supported pre-filing injunctions in prior cases. Contrast Urban,
> 768 F.2d at 1499"

The undersigned defective pre-filing order shares key Klayman flaw:

lack of support for its characterizations with "substantive findings".

## No "friolity analysis"

The undersigned order is further contravened because it also includes "no substantive findings". Just like the Klayman court, the district court also did not support its characterization of the pro se plaintiff's historical filings with "substantive findings". The entire orders findings are:

> "MINUTE ORDER. In light of the court's denials of intervention by Brad Greenspan and his history of frivolous, repetitive filings, the Clerk of Court is hereby directed to accept no further filings from Mr. Greenspan in this matter, absent leave of court. Signed by Judge Amit P. Mehta on 1/25/24"

The court's decision to issue a pre-filing order against the pro se litigant is groundless and unjustifiable. The order contains no evidence or references to any specific lawsuits, making it impossible to link to any substantive or non-substantive findings.  Klayman also cites the need for a "friolity analysis": "Notably absent in the district court's frivolity analysis was a finding that Klayman's claims were, as a matter of law, "irrational" or "incoherent," or that they "evidence[d] a 'complete lack of any substantive allegations[.]'" In re Powell,  851 F.2d a... The district court did not, in other words, find they involved the       "obvious lack of merit" that has supported pre-filing injunctions in the past. Id. This

absence is particularly glaring since only one of Klayman's previously

dismissed suits was arguably treated as frivolous by the dismissing

court. " similarly, only one of the pro se Plaintiffs previously dismissed

suits wa arguably treated as frivolous by the dismissing court.

There was no mention of plaintiff claims as "irrational," "incoherent,",

lacking "any substantive allegations.", or having "obvious lack of merit."

Indeed, no prior lawsuits have been dismissed as frivolous.

One Case Cannot Count Because Defendant's Attorney Misled Los

Angeles Federal Judge Using False Ex Parte Scheme and Omitted

These Facts To This Circuit Court And Undersigned Court Misled

Undersigned Judge, circuit court,  Google's attorney doesnt  bother to

disclose his law firm deceived another Federal Judge. The other

cases are just dismissals non-merit based, not any findings of frivolous

or vextious actions.

For instance, this Court can review Request For Judicial Notice #42 the

documents the defendant relies on to allege a failed attempt to

intervene in the defendant's antitrust case where they actually lost

summary judgment for per se violations of Sherman Act 1 and 2

suppressing their own employee wages Case 5:11-cv-02509 is somehow

worthy of a vextious litigant case notched against the pro se plaintiff.

In addition the defendant does not admit they created another of the cases the San Jose district court vextious litigant order is underpinned by and they know its a sham with which they continue to mislead more Federal judges. The cases and papers proving the defendant is in contempt of the Appellate Court and District Court can be seen thru reviewing the papers filed in Federal Court in San Jose (Request Judicial Notice #27 and #47).

## III- CONCLUSION

This court should remand for lack of jurisdiction after directing the 10e correction or 1735 Government required restoration of the records working with the clerk or find jurisdiction based on the ECF misclassification error erroneously recording the motion for affirmative relief that complied with Circuit rule 27 into a memorandum in support of the motion to reinstate which prevented that affirmative relief motion to be considered and disposed of on the merits. Alternatively vacating the pre-filing order for a lack of jurisdiction since an appeal had already been noticed and the Appellant dismissed when January 24, 2024 Pre-filing vexatious litigant minute order by default without

notice was issued which relies on outdated law for vexatious litigants in DC Circuit which this Court must find has been supervened by June 2024 Klayman ruling. In addition this court must find the request for judicial notice granted docket #794 in undersigned court prevents the defendant from continuing to claim the San Jose District Court order is not void thru a lack of jurisdiction because the ninth circuit appeal was ongoing when the San Jose district court was induced by Google to record a frivolous unmerited default pre-filing order lacking jurisdiction just like the undersigned pre-filing Order.

Dated: December 30, 2024

Respectfully submitted.

By /s/ Alfred C. Constants III
Alfred C. Constants III, Esq.
Constants Law Offices, LLC.
115 Forest Ave., Unit 331
Locust Valley, NY 11560
Tel: 516-200-9660
Email: Constantslaw49@gmail.com
*Attorney For Appellant*

26

## SUBMISSION OF CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a), Appellant makes the following certifications:

1. This motion complies with the type-volume limitation of words for motions as it contains 4688 words and, thus complies with Fed. R. App. P. 27 and 32.

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(6), because this motion has been prepared in monospaced typeface using Microsoft Word 2021 in 14 pitch font, Century Style.

Dated: December 30, 2024

Respectfully submitted.

By /s/ Alfred C. Constants III

Alfred C. Constants III, Esq.
Constants Law Offices, LLC.
115 Forest Ave., Unit 331
Locust Valley, NY 11560
Tel: 516-200-9660
Email: Constantslaw49@gmail.com
*Attorney For Appellant*

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

28 U.S. Code § 1734 Court record lost or destroyed, generally
(a) A lost or destroyed record of any proceeding in any court of the United States may be supplied on application of any interested party not at fault, by substituting a copy certified by the clerk of any court in which an authentic copy is lodged.

28 U.S. Code § 1735 - Court record lost or destroyed where United States interested (b) Whenever the United States is interested in any lost or destroyed records or files of a court of the United States, the clerk of such court and the United States attorney for the district shall take the steps necessary to restore such records or files, under the direction of the judges of such court.

15 U.S. Code § 7a–3 - Anti-retaliation protection for whistleblowers

(a) Whistleblower protections for employees, contractors, subcontractors, and agents
(1) In general
No employer may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against a covered individual in the terms and conditions of employment of the covered individual because of any lawful act done by the covered individual—
(A) to provide or cause to be provided to the Federal Government or a person with supervisory authority over the covered individual (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) information relating to—
(i) any violation of, or any act or omission the covered individual reasonably believes to be a violation of, the antitrust laws; or
(ii) any violation of, or any act or omission the covered individual reasonably believes to be a violation of, another criminal law committed

28

in conjunction with a potential violation of the antitrust laws or in conjunction with an investigation by the Department of Justice of a potential violation of the antitrust laws; or

(B) to cause to be filed, testify in, participate in, or otherwise assist a Federal Government investigation or a Federal Government proceeding filed or about to be filed (with any knowledge of the employer) relating to—

(i) any violation of, or any act or omission the covered individual reasonably believes to be a violation of, the antitrust laws; or

(ii) any violation of, or any act or omission the covered individual reasonably believes to be a violation of, another criminal law committed in conjunction with a potential violation of the antitrust laws or in conjunction with an investigation by the Department of Justice of a potential violation of the antitrust laws.

(2) Limitation on protections

Paragraph (1) shall not apply to any covered individual if—

(A) the covered individual planned and initiated a violation or attempted violation of the antitrust laws;

(B) the covered individual planned and initiated a violation or attempted violation of another criminal law in conjunction with a violation or attempted violation of the antitrust laws; or

(C) the covered individual planned and initiated an obstruction or attempted obstruction of an investigation by the Department of Justice of a violation of the antitrust laws.

(3) Definitions

In this section:

(A) Antitrust laws

The term "antitrust laws" means section 1 or 3 of this title.

(B) Covered individual

The term "covered individual" means an employee, contractor, subcontractor, or agent of an employer.

(C) Employer

The term "employer" means a person, or any officer, employee, contractor, subcontractor, or agent of such person.

(D) Federal Government

The term "Federal Government" means—
(i) a Federal regulatory or law enforcement agency; or
(ii) any Member of Congress or committee of Congress.
(E) Person
The term "person" has the same meaning as in subsection (a) of section 12 of this title.

(4) Rule of construction
The term "violation", with respect to the antitrust laws, shall not be construed to include a civil violation of any law that is not also a criminal violation.

(b) Enforcement action
(1) In general
A covered individual who alleges discharge or other discrimination by any employer in violation of subsection (a) may seek relief under subsection (c) by—
(A) filing a complaint with the Secretary of Labor; or

(B) if the Secretary of Labor has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.
(2) Procedure
(A) In general
A complaint filed with the Secretary of Labor under paragraph (1)(A) shall be governed under the rules and procedures set forth in section 42121(b) of title 49.

(B) Exception
Notification made under section 42121(b)(1) of title 49 shall be made to any individual named in the complaint and to the employer.

(C) Burdens of proof
An action brought under paragraph (1)(B) shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49.

(D) Statute of limitations

A complaint under paragraph (1)(A) shall be filed with the Secretary of Labor not later than 180 days after the date on which the violation occurs.

(E) Civil actions to enforce

If a person fails to comply with an order or preliminary order issued by the Secretary of Labor pursuant to the procedures set forth in section 42121(b) of title 49, the Secretary of Labor or the person on whose behalf the order was issued may bring a civil action to enforce the order in the district court of the United States for the judicial district in which the violation occurred.

(c) Remedies

(1) In general

A covered individual prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the covered individual whole.

(2) Compensatory damages

Relief for any action under paragraph (1) shall include—

(A) reinstatement with the same seniority status that the covered individual would have had, but for the discrimination;

(B) the amount of back pay, with interest; and

(C) compensation for any special damages sustained as a result of the discrimination including litigation costs, expert witness fees, and reasonable attorney's fees.

(d) Rights retained by whistleblowers

Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any covered individual under any Federal or State law, or under any collective bargaining agreement.

15 U.S. Code § 9 - Jurisdiction of courts; duty of United States attorneys; procedure

The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of section 8 of this title; and it shall be the duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petitions setting forth the case and praying that such violations shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed, as soon as may be, to the hearing and determination of the case; and pending such petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises.

15 U.S. Code § 14 - Sale, etc., on agreement not to use goods of competitor

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

15 U.S. Code § 15f - Actions by Attorney General

(a) Notification to State attorney general
Whenever the Attorney General of the United States has brought an action under the antitrust laws, and he has reason to believe that any State attorney general would be entitled to bring an action under this Act based substantially on the same alleged violation of the antitrust laws, he shall promptly give written notification thereof to such State attorney general.

(b) Availability of files and other materials
To assist a State attorney general in evaluating the notice or in bringing any action under this Act, the Attorney General of the United States shall, upon request by such State attorney general, make available to him, to the extent permitted by law, any investigative files or other materials which are or may be relevant or material to the actual or potential cause of action under this Act.

15 U.S. Code § 16 - Judgments

(a) Prima facie evidence; collateral estoppel
A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken. Nothing contained in this section shall be construed to impose any limitation on the application of

collateral estoppel, except that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws.

(b) Consent judgments and competitive impact statements; publication in Federal Register; availability of copies to the public
Any proposal for a consent judgment submitted by the United States for entry in any civil proceeding brought by or on behalf of the United States under the antitrust laws shall be filed with the district court before which such proceeding is pending and published by the United States in the Federal Register at least 60 days prior to the effective date of such judgment. Any written comments relating to such proposal and any responses by the United States thereto, shall also be filed with such district court and published by the United States in the Federal Register within such sixty-day period. Copies of such proposal and any other materials and documents which the United States considered determinative in formulating such proposal, shall also be made available to the public at the district court and in such other districts as the court may subsequently direct. Simultaneously with the filing of such proposal, unless otherwise instructed by the court, the United States shall file with the district court, publish in the Federal Register, and thereafter furnish to any person upon request, a competitive impact statement which shall recite—
(1) the nature and purpose of the proceeding;
(2) a description of the practices or events giving rise to the alleged violation of the antitrust laws;
(3) an explanation of the proposal for a consent judgment, including an explanation of any unusual circumstances giving rise to such proposal or any provision contained therein, relief to be obtained thereby, and the anticipated effects on competition of such relief;
(4) the remedies available to potential private plaintiffs damaged by the alleged violation in the event that such proposal for the consent judgment is entered in such proceeding;
(5) a description of the procedures available for modification of such proposal; and

(6) a description and evaluation of alternatives to such proposal actually considered by the United States.

(c) Publication of summaries in newspapers

The United States shall also cause to be published, commencing at least 60 days prior to the effective date of the judgment described in subsection (b) of this section, for 7 days over a period of 2 weeks in newspapers of general circulation of the district in which the case has been filed, in the District of Columbia, and in such other districts as the court may direct—

(i) a summary of the terms of the proposal for consent judgment,

(ii) a summary of the competitive impact statement filed under subsection (b),

(iii) and a list of the materials and documents under subsection (b) which the United States shall make available for purposes of meaningful public comment, and the place where such materials and documents are available for public inspection.

(d) Consideration of public comments by Attorney General and publication of response

During the 60-day period as specified in subsection (b) of this section, and such additional time as the United States may request and the court may grant, the United States shall receive and consider any written comments relating to the proposal for the consent judgment submitted under subsection (b). The Attorney General or his designee shall establish procedures to carry out the provisions of this subsection, but such 60-day time period shall not be shortened except by order of the district court upon a showing that (1) extraordinary circumstances require such shortening and (2) such shortening is not adverse to the public interest. At the close of the period during which such comments may be received, the United States shall file with the district court and cause to be published in the Federal Register a response to such comments. Upon application by the United States, the district court may, for good cause (based on a finding that the expense of publication in the Federal Register exceeds the public interest benefits to be gained from such publication), authorize an alternative method of public dissemination of the public comments received and the response to those comments.

(e) Public interest determination

(1) Before entering any consent judgment proposed by the United States under this section, the court shall determine that the entry of such judgment is in the public interest. For the purpose of such determination, the court shall consider—

(A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

(2) Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.

(f) Procedure for public interest determination

In making its determination under subsection (e), the court may—

(1) take testimony of Government officials or experts or such other expert witnesses, upon motion of any party or participant or upon its own motion, as the court may deem appropriate;

(2) appoint a special master and such outside consultants or expert witnesses as the court may deem appropriate; and request and obtain the views, evaluations, or advice of any individual, group or agency of government with respect to any aspects of the proposed judgment or the effect of such judgment, in such manner as the court deems appropriate;

(3) authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate;

(4) review any comments including any objections filed with the United States under subsection (d) concerning the proposed judgment and the responses of the United States to such comments and objections; and

(5) take such other action in the public interest as the court may deem appropriate.

(g) Filing of written or oral communications with the district court

Not later than 10 days following the date of the filing of any proposal for a consent judgment under subsection (b), each defendant shall file with the district court a description of any and all written or oral communications by or on behalf of such defendant, including any and all written or oral communications on behalf of such defendant by any officer, director, employee, or agent of such defendant, or other person, with any officer or employee of the United States concerning or relevant to such proposal, except that any such communications made by counsel of record alone with the Attorney General or the employees of the Department of Justice alone shall be excluded from the requirements of this subsection. Prior to the entry of any consent judgment pursuant to the antitrust laws, each defendant shall certify to the district court that the requirements of this subsection have been complied with and that such filing is a true and complete description of such communications known to the defendant or which the defendant reasonably should have known.

(h) Inadmissibility as evidence of proceedings before the district court and the competitive impact statement

Proceedings before the district court under subsections (e) and (f) of this section, and the competitive impact statement filed under subsection (b) of this section, shall not be admissible against any defendant in any action or proceeding brought by any other party against such defendant under the antitrust laws or by the United States under section 15a of this title nor constitute a basis for the introduction of the consent judgment as prima facie evidence against such defendant in any such action or proceeding.

(i) Suspension of limitations

Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during

the pendency thereof and for one year thereafter: Provided, however, That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

15 U.S. Code § 25 - Restraining violations; procedure

The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of this Act, and it shall be the duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petition setting forth the case and praying that such violation shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition, the court shall proceed, as soon as may be, to the hearing and determination of the case; and pending such petition, and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises. Whenever it shall appear to the court before which any such proceeding may be pending that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned whether they reside in the district in which the court is held or not, and subpoenas to that end may be served in any district by the marshal thereof.

15 U.S. Code § 26 - Injunctive relief for private parties; exception; costs

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: Provided, That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit for injunctive relief against any common carrier subject to the jurisdiction of the Surface Transportation Board under subtitle IV of title 49. In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.